GARRET KELLY, Respondent, *v.* FRANCIS DYKES and Others Personally and as Trustees of MILLIKEN BROTHERS, INC., Appellants.

First Department, November 17, 1916.

**Master and servant — negligence — injury to ironworker by fall of plank while removing guy rope from pier — evidence — proof insufficient to establish general custom — evidence as to failure of defendant to call witness — privileged testimony — conversation with physician.**

In an action by an experienced steel and ironworker to recover damages for personal injuries sustained by being struck by a plank while loosening a guy rope, alleged to have been caused by the negligence of the defendants in failing to have planks lashed to a pier about ten feet high

by ropes or chains other than those composing the guy ropes of a derrick, the plaintiff's claim that it was the custom in the building trade to so secure planks thus used, was not established by the evidence of two witnesses that there was such a general custom, who when interrogated as to specific instances were able to name very few.

It was error in such an action after all the other witnesses had been called and the case practically closed to allow plaintiff to recall as a witness a former employee of the defendants who was not friendly with them, to elicit from him the fact that he had been subpœnaed by the defendants in order to prejudice them by suggesting that the reason they had not called him was because his evidence would have been unfavorable.

All conversations with a physician are not protected by section 834 of the Code of Civil Procedure, and it was error for the court to refuse to permit the defendants to interrogate a physician upon whom plaintiff had called a few days before the trial in order to show that the visit and the conversation which ensued had nothing to do with any medical treatment, but only related to the testimony the physician would give if called as a witness.

LAUGHLIN, J., dissented.

APPEAL by the defendants, Francis Dykes and others, personally and as trustees, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of October, 1915, upon the verdict of a jury for $5,250, and also from an order entered in said clerk's office on the same day denying defendants' motion for a new trial made upon the minutes.

*E. Clyde Sherwood,* for the appellants.

*Leonard F. Fish,* for the respondent.

SCOTT, J.:

The action is for damages for negligence. The defendants had contracted to erect the steel work for a new building, and plaintiff, who had had a long experience as a steel and iron-worker, was in their employ. In the course of the work defendants used a derrick consisting of an upright mast and a swinging boom. The mast was upheld by guy ropes, one of which led to and was carried around a brick pier consisting of a part of an old wall. As the work progressed it became necessary to shift this guy, and plaintiff and another man were directed by the foreman to remove the guy from the brick pier.

First Department, November, 1916.          [Vol. 174.

This pier was about ten feet high and the place at which the guy was fastened was about two feet from the top. It was testified to, and the jury must have found, that two short pieces of plank had been put up against the side of the pier so that the guy rope or chain held them in place against the pier. As the guy was slackened these pieces of plank, according to plaintiff's story, slipped down and one of them hit him on the forehead producing serious injuries. The plaintiff says, although it is not easy to believe, that he did not observe the plank until it fell and hit him.

The negligence charged against defendants is that they had failed to have the planks lashed to the pier by ropes or chains other than those composing the guy, so that these planks would remain fixed when the guy was loosened. The plaintiff's claim is that it is the custom in the building trade in the city of New York to so secure planks thus used. Even if such be the general custom it seems to be by no means clear that a departure from it is imputable as negligence, for it is difficult to understand how a workman engaged in loosening a guy around a brick pier, the guy being only a short distance above his head, if he used his eyes, could have failed to see that there were planks against the pier encompassed by the guy, and likely to slip down when the guy was loosened. Certainly it is difficult to appreciate how the failure to have lashed the planks to the pier could be regarded as culpable negligence likely to result in such an accident as happened to plaintiff. But even if the jury might have so considered it, the evidence given to establish a contrary custom was insufficient to carry that question to the jury. In some jurisdictions, notably in Illinois and Wisconsin, testimony as to a general usage and custom is not admissible to prove negligent construction, and where such evidence is admissible the rule is that in order to establish the existence of a general custom the number of instances proven must be relatively large. (*Rosenstein* v. *McCutcheon*, 155 App. Div. 278; Labatt Mast. & Serv. § 53.) In the present case we think that the evidence of general custom was entirely insufficient. Two witnesses were called, both of whom had been iron workers for years, and who had sometimes acted as foremen, who testified that there was a

general custom in and around the city of New York to lash planks under circumstances such as were presented here, but when interrogated as to specific instances they were able to name very few. This did not measure up with the recognized rules as to the evidence necessary to establish the existence of a general custom.

Our attention is called to a very obvious error in the course of the trial which, while in some cases it might appear to be negligible, yet assumes importance when the plaintiff's right to recover at all rests upon so slight a foundation as appears in the present case.

The plaintiff called as a witness one Steinlacher, who had been in defendants' employ when the accident happened. It appeared from his examination that he was far from friendly with defendants and decidedly inimical to defendants' foreman to whom the act of negligence was imputed. After all the other witnesses had been called and the case practically closed on both sides plaintiff was allowed to recall Steinlacher only to elicit from him the fact that he had been subpœnaed by the defendants. This against defendants' objection and exception. No legitimate purpose could have been attained by thus recalling and interrogating the witness, and it should not have been permitted. What plaintiff sought was thereby to prejudice the defendants by suggesting to the jury that the reason defendants had not called the witness was because his evidence would have been unfavorable. This was improper, for the witness was not in defendants' employ, or any more under their influence or more accessible to them than he was to plaintiff. Therefore, no unfavorable inference could legitimately be drawn against defendants because of their failure to call the witness especially since he had already been called, examined and cross-examined as a part of the plaintiff's case and before defendants had called any witnesses at all. (*Reehil* v. *Fraas*, 129 App. Div. 563.)

A claim of error is also predicated upon the refusal of the court to permit defendants to interrogate a physician upon whom plaintiff had called a few days before the trial. The defendants sought to show, and if permitted might have been able to show, that this visit and the conversation which ensued

had nothing to do with any medical treatment, but was only as to the testimony the physician would give if called as a witness. To this extent at least the defendants should have been allowed to go, for it is not every conversation with a physician which is protected by statute. "Where the testimony of a physician is sought to be excluded under the provisions of that section [834] of the Code, the burden is upon the party seeking to exclude it, to bring the case within its provisions. He must make it appear not only that the information which he seeks to exclude was acquired by the witness while attending the patient in a professional capacity, but also that it was necessary to enable him to perform some professional act." (*People v. Koerner,* 154 N. Y. 355.)

Reviewing the whole case, we are of opinion that the judgment should not be allowed to stand.

The judgment and order appealed from are, therefore, reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING and PAGE, JJ., concurred; LAUGHLIN, J., dissented.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.